FILED 01 MAY '19 15:35 USDC-ORE

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Samsung Verizon slide phone and black Motorola<br>Verizon smart phone currently located at 730 SW<br>Bonnett Way, Bend, OR. | )<br>)<br>)<br>)<br>)<br>) | Case No. 6:19-mc- 379 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Blue Samsung Verizon slide phone and black Motorola Verizon smart phone as described in Attachment A hereto.

located in the _____ District of _____Oregon_____ , there is now concealed *(identify the person or describe the property to be seized):*

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2261A(2)(B)        Stalking | |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Chad Lapp, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone at 3:30 a.m./p.m. *(specify reliable electronic means).*

Date: 5/1/19

_____
*Judge's signature*

City and state: Eugene, Oregon

Mustafa T. Kasubhai, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF CHAD LAPP

### Affidavit in Support of an Application
### for a Search Warrant for a Phone

I, Chad Lapp, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.        I am a Special Agent with the Federal Bureau of Investigation (FBI) and have

been since December 2014.   My current assignment is to the Portland Division Bend Resident

Agency.   I received 21 weeks of training at the FBI Academy in Quantico, Virginia.   My

responsibilities include the investigation of federal criminal offenses that occur in Central

Oregon.   I have investigated numerous offenses that have been committed or facilitated through

the use of cell phones.

2.        I submit this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the search and examination of a

blue Samsung SCH-U460 slider phone and a black Motorola smart phone with a black colored

Otterbox case (hereinafter "Phones"), which are currently in FBI custody at 730 SW Bonnett

Way, Bend, Oregon, identified with case number 9A-PD-2609198, as described in Attachment A

hereto, and the extraction of electronically stored information from the Phones, as described in

Attachment B hereto.   The blue Samsung SCH-U460 was first seized from Jonathan Mann

(MANN) by the Redmond Police Department (RPD) when MANN was arrested for telephonic

harassment and stalking on or about September 20, 2015.   The Samsung was returned to MANN

on June 23, 2016.   On February 9, 2017, RPD again seized the Samsung incident to MANN's

arrest for violation of a stalking order and telephonic harassment.   The black Motorola smart

phone was seized from MANN on March 1, 2018 by RPD incident to MANN's arrest for

violations of a stalking order and telephonic harassment.    As set forth below, I have probable

cause to believe and do believe that the items set forth in Attachment B constitute evidence of

violations of 18 U.S.C. § 2261A(2)(B) – Stalking.

   3.  On March 20, 2019, a federal grand jury returned a true bill, indicting Mann on

two counts of Stalking.    The case is currently scheduled for jury trial on June 4, 2019 before

United States District Judge Michael J. McShane.    RPD previously applied for and executed

state search warrants for the contents of both phones pursuant to the state investigations.    The

first state search warrant for the Samsung was obtained on February 4, 2016.    The Samsung was

later returned to MANN and seized again in 2017, and the second search warrant was obtained

on February 13, 2017.    The Motorola was seized in 2018, and a search warrant was obtained on

March 2, 2018.    All three of these search warrants were obtained in Deschutes County, Oregon,

as part of the state investigation.

   4.  Your affiant reviewed the RPD reports, phone extraction reports, and

photographs/videos taken of the devices searched pursuant to the three state warrants.    For the

search warrant for the Samsung obtained on February 4, 2016, Redmond Police Officer Michael

Maloney reported "In summary two messages which (W1) received after (AV2) told him not to

contact her were located on the phone."    Additionally, a short extraction report was provided

which shows two outgoing messages to W1 and three draft messages.    The report shows that

only 5 out of 591 messages on the device at that time were listed in the report (limitations as to

potentially recoverable messages from this device are discussed below).

   5.  For the warrant for the Samsung obtained on February 13, 2017, the report

documents numerous text messages sent and received from the phone but the date range of the

**Page 2 – Affidavit of Chad Lapp**      **USAO Version Rev. October 2015**

data searched for only included messages that fell between February 6, 2017 and February 9, 2017, and only messages between February 6, 2017 and February 8, 2018 were included in the report.   The phone was returned to MANN on June 23, 2016 and seized a second time incident to his arrest on February 9, 2017.   Computer Forensic Examiner (CFE) Chris Duchateau executed the warrant on the phone, and told the state warrant affiant that the phone was older model and that the memory does not support recovering deleted messages, and that if a message were sent and deleted there would be no way to recover it.   Looking at the extraction report for 2017, it notes that the report includes 190 of a total of 363 SMS messages, and I believe the device contains additional messages than those that I have received from RPD.   This warrant is being sought in order to search for and seize any relevant communications sent or received by MANN as well as other data including notes and photographs that would be evidence of the federal offenses and show ownership and control of the device.

6.      Your affiant reviewed the RPD reports that documented the data seized pursuant to the warrant for the Motorola obtained on March 2, 2018.   RPD Officer Maloney reported that on March 2, 2018, he gave the phone to CFE Duchateau and that the report generated from examining the phone would be added to the case file when it was completed.   The report was not added to the case file but multiple screenshots of the phone showing communications between MANN, AV2, and a contact saved as "Mam" were added to the report.   This warrant is being sought in order to search the Motorola and seize any relevant communications sent or received by MANN as well as other data including notes and photographs that would be evidence of the federal offenses and show ownership and control of the device.   While there is overlap between the state and federal investigations, the offenses charged are different, and the

date range for this warrant is broader, and the warrant will allow your affiant to examine the devices for data relevant to the federal case.

7.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.    The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

8.      Title 18 U.S.C. § 2261(A)(2)(B) provides that whoever with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person as described in the statute shall be punished in accordance with section 2261(b).

9.      Proof of intent is an element of the offense, and MANN's mental state during the offense is relevant to the upcoming trial.    Accordingly, this warrant also seeks information regarding MANN's mental state and mental health.

**Statement of Probable Cause**

**Victims**

10.     Adult Victim 1 (AV1) is the husband of Witness 1 (W1).   W1 worked with MANN at Pappy's Pizza in Redmond, OR.   MANN was W1's shift manager.   MANN began pursuing W1 in September 2015.   In September 2015, W1 was 19 years old and MANN was 30 years old.   Adult Victim 2 (AV2) is W1's father.   W2 is W1's mother.

**September 2015 Stalking Complaint and Arrest**

11.     On September 19, 2015, AV2 called the Redmond Police Department (RPD) in Oregon to report a stalking incident that occurred at his residence.   AV2 reported that MANN has been pursuing his daughter, W1.   AV2 reported that over the last few years, MANN has called and texted W1 on more than one occasion and has showed up at her high school volleyball games.   AV2 reported that W1 did not want any contact with MANN.   AV2 reported that on September 19, 2015, MANN arrived at W1 and AV2's residence and was confronted by AV2. MANN told AV2 that W1 "needs his help."   AV2 advised that based on his observations MANN may have been suffering mental health issues.   AV2 told MANN that based on repeated unwanted contact, MANN was trespassed from their property.   AV2 made it clear to MANN that his daughter, W1, did not wish any contact with him whether it be phone, text, email, in person, or via third person.

12.     On September 20, 2015, Redmond Police Officer Michael Maloney responded to W1's residence based on a report that W1 was receiving unwanted messages from MANN.   W1 told Officer Maloney that MANN had been a shift manager when she worked at Pappy's Pizza. W1 advised that MANN was always a little "weird" but she felt sorry for him.   W1 advised that

MANN gave her a nickname which he constantly used.   W1 advised that the last time she

worked with MANN was in 2014.   W1 advised that after she and MANN stopped working

together, she would receive an occasional message from MANN.   W1 stated the messages

seemed to be MANN wanting to start a conversation with her.   W1 stated that she would reply

with only one word or a response to indicate she did not want to continue the conversation.

13.   W1 advised police that on September 13, 2015, she made a casual acquaintance

with MANN at Pappy's pizza.   After she left Pappy's pizza, she and a friend, went to a Dutch

Brother's coffee shop.   As they were sitting in their car, MANN appeared in the car window,

causing W1 and her friend to be extremely alarmed.   After the September 13, 2015 interaction,

MANN began to contact her continually.

14.   W1 advised police that one of her current co-workers at Dutch Brothers stated

that MANN showed up at the coffee shop multiple times asking to see her.   W1 had a boyfriend,

AV1, and MANN believed AV1 was harming W1 and that AV1 needed to stop talking to her.

15.   W1 gave Officer Maloney a print out of the messages between her and MANN

starting on July 26, 2015.   The messages became obsessive starting on September 17, 2015.

Based on the continual and alarming content of the messages and the fact MANN showed up to

W1's house, W1 advised that she was extremely alarmed and feared what MANN might do to

her, AV1, her family, or her friends.   Your affiant has reviewed the messages and many are

bizarre and incoherent, and some are directed at AV1.   W1 filled out a State of Oregon Stalking

Citation.   Officer Maloney arrested MANN for two counts of telephonic harassment and one

count of stalking.

16.     After MANN was arrested, Officer Maloney served him with the stalking citation.

When Officer Maloney served MANN the stalking citation, MANN stated "I don't recognize

that.   All that is, is a piece of paper to me."   Officer Maloney called the Deschutes County

Mobile Crisis Team to conduct a mental health evaluation of MANN. Terry S. evaluated MANN

and advised that he was very concerned MANN would reoffend when he was released from jail.

MANN's blue Samsung slide phone was seized incident to his arrest. On February 4, 2016,

Deschutes County Circuit Court Judge Stephen Forte signed a search warrant for the phone for

evidence of telephonic harassment and stalking.   On February 5, 2016, Redmond Police

Department Computer Forensic Examiner Chris Duchateau executed the search warrant on the

phone.   Two messages which W1 received after AV2 told MANN not to contact her were

located on the phone.   The phone was returned to MANN on June 23, 2016.

### February 2017 Stalking Order Violation and Arrest

17.     On February 8, 2017, Officer Maloney responded to a stalking order violation

report.   W1 advised that she received a text message from MANN that morning.   W1 told

Officer Maloney that she had recently gotten married and was pregnant.   W1 stated that during

the last week, her immediate social circle had been receiving text messages from MANN.   W1

stated that her parents, AV2 and W2, had also received text messages from MANN.   W1

advised that due to her friends and parents receiving messages from MANN, she unblocked his

number from her phone.   After unblocking MANN's number, W1 received a message from

MANN that stated "I Love You (W1).   Man, more than Anything."   W1 stated the message had

brought back the same alarm and concern which she had felt in 2015.   W1 stated that she was in

fear for AV1's safety, for their property, and their unborn child.   W1's brother, W3, also

**Page 7 – Affidavit of Chad Lapp**                    **USAO Version Rev. October 2015**

received several texts from MANN. In one text MANN stated "Yer pop don't wanuss shoot turtle shellz no more. If I contact he or his wife again he will half me arrested." Another text stated "I would do anything for your little Sister (W3). I think she is in serious trouble. I have 4 over a year now."

18.     AV2 called Officer Maloney and advised that he and his wife, W2, had received messages from MANN. AV2 advised that he received three messages from MANN and W1 received 21 messages from MANN. AV2 stated that MANN had made veiled threats to AV1 and AV2 and the rest of the messages were rambling and incoherent. One of the messages to AV2 stated "You have no idea what I'm capable of." W2 told officer Maloney that she was alarmed and concerned about MANN interjecting himself into their lives again. W2 advised that she was concerned for AV1's safety due to MANN still loving W1.

19.     On February 9, 2017, the Redmond Police Department arrested MANN for violating a stalking order and telephonic harassment. MANN's blue Samsung slide phone was seized incident to his arrest. On February 13, 2017, Deschutes County Circuit Court Judge Beth Bagley signed a search warrant for the phone to search for evidence of violation of a stalking order and telephonic harassment during the date range of February 6, 2017 to February 9, 2017.

## March 2018 Stalking Order Violation and Arrest

20.     On November 2, 2017, Officer Maloney contacted W1 and AV1 because he received information that they both had recent contact with MANN. AV1 told Officer Maloney that MANN came to AV1's work at the Grocery Outlet every two to three weeks. AV1 believed MANN was trying to intimidate him by staring at him while he walked around the store. AV1

stated that when he saw MANN in the store he attempted to avoid any contact with MANN by going to another area of the store.

21.    On February 27, 2018, Officer Maloney responded to AV1's place of employment for a theft case unrelated to MANN.    AV1 told Maloney that MANN was at the store earlier that day.    AV1 stated that MANN rammed his shopping cart into several crates of milk that AV1 recently moved to the grocery store aisle.    AV1 advised that MANN said something to him but he did not hear what it was.

22.    On February 28, 2018, Officer Maloney responded to AV1's place of employment for an unwanted male.    The male was MANN who was yelling and acting erratically inside the store.    Officer Maloney interviewed AV1 who identified the male as MANN.    AV1 told Officer Maloney that he was alarmed and scared, so he went to the back area of the store where customers are not allowed.    Officer Maloney contacted MANN at the store and trespassed him from the property.

23.    On March 1, 2018, Officer Maloney was contacted by AV2.    AV2 told Officer Maloney that on March 1, 2018 he received a text message from an individual self-identifying as "Jonny Walker, Mann."    The messages continued in the same grammatical pattern as the previous messages from MANN.    On message stated "(AV2), your daughter, is the best therapist I've ever had."

24.    Also on March 1, 2018, Officer Maloney was contacted by AV1.    AV1 told Officer Maloney that MANN had just contacted him at the gas station at the Redmond Fred Meyer.    AV1 advised that he was bent over filling his car tires with air when MANN started yelling at him from approximately 10 feet away.    AV1 stated that he was scared and alarmed by the tone of MANN's

yelling.  AV1 stated that MANN said something similar to "You know that (W1's) baby ain't yours."  AV1 stated that he felt threatened and intimidated by MANN's repeated and unwanted contacts.

25.     On March 1, 2018, Officer Maloney contacted MANN.  MANN admitted to contacting AV1.  MANN became aggressive with Officer Maloney and was detained in handcuffs.  During Officer Maloney's contact with MANN, it appeared he was suffering from a mental health issue.  MANN's emotions would rapidly vary from extreme anger to calm. MANN was advised of his Miranda Rights and acknowledged that he understood his rights. MANN consented for a search of his cell phone which had AV2's telephone number saved in the contacts.  MANN advised that he had pictures of W1 all over his apartment.  MANN advised that it did not matter what the police or anyone else said, he knew he was supposed to be with W1.  MANN was arrested for one count violating a stalking order and for telephonic harassment.

26.     MANN's black Motorola smart phone was seized incident to his arrest.  On March 2, 2018, Deschutes County Circuit Court Judge A. Brady signed a search warrant for evidence of felony stalking and telephonic harassment for a date range of August 10, 2017 to March 1, 2018.

### Federal Grand Jury Indictment

27.     On March 20, 2019, MANN was indicted for two counts of 18 U.S.C. § 2261A(2)(B) (Stalking).  Count 1 was for communications MANN sent to AV1 for the period of on or about September 17, 2015 through on or about February 8, 2017.  Count 2 was for

communications MANN sent to AV2 for the period of on or about February 7, 2017 through on or about March 1, 2018.

28.     The Phones are currently in storage at the FBI Bend Resident Agency's evidence locker, identified with case number 9A-PD-2609198.   The phones were previously stored at Redmond Police Department.   In my training and experience, I know that the Phones have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Phones first came into the possession of the FBI.   For the time that MANN's Samsung was in his possession in 2016, prior to being seized for a second time, the contents of the device changed.

29.     Based on my training and experience, a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; recording, storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the

Internet,[1] including the use of apps.[2]   Wireless telephones may also include a global positioning system ("GPS") technology for determining the location of the device.

30.    In my training and experience, examining data stored on wireless telephones can uncover, among other things, evidence that reveals or suggests who possessed or used the phone, how the phone was used, and the purpose of its use.

31.    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Phones were used, the purpose of their use, who used them, and when.   There is probable cause to believe that this forensic electronic evidence will be on the Phones because, based on my knowledge, training, and experience, I know:

a.        Phones can store information for long periods of time, including information viewed via the Internet.   Files or remnants of files can be recovered with forensic tools months or even years after they have been downloaded onto a phone, deleted, or viewed via the Internet.   Electronic files downloaded to a phone can be stored for years at little or no cost. When a person "deletes" a file, the data contained in the file does not actually disappear, rather that data remains on the phone until it is overwritten by new data.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the phone

---

[1]   The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

[2]   Apps is an abbreviation for applications.   An app is a self-contained program or piece of software designed to fulfill a particular purpose.   An app can run on the Internet, on a computer, on a cell phone, or on other electronic devices.

**USAO Version Rev. October 2015**

that is not currently being used by an active file—for long periods of time before they are overwritten.    In addition, the operating system may also keep a record of deleted data.

        b.        Wholly apart from user-generated files, the Phones may contain electronic evidence of how they have been used, what they have been used for, and who has used them. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating systems or application operations, and file system data structures.

        c.        Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

        d.        Data on the Phones can provide evidence of a file that was once on the Phones but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).    Systems can leave traces of information on the Phones that show what tasks and processes were recently active.    Web browsers, email programs, and chat programs store configuration information on the Phones that can reveal information such as online nicknames and passwords.    Operating systems can record additional information, such as the attachment of peripherals, including SD cards or other flash media, and the times the Phones were in use.    File systems can record information about the dates files were created and the sequence in which they were created.

        e.        Forensic evidence on a device can also indicate who has used or controlled the device.    This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        f.        A person with appropriate familiarity with how the Phones work may,

**Page 13 – Affidavit of Chad Lapp**           **USAO Version Rev. October 2015**

after examining this forensic evidence in its proper context, be able to draw conclusions about how the Phones were used, the purpose of its use, who used it, and when.

   g. The process of identifying the electronically stored information necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on the Phone is evidence may depend on other information stored on the Phones and the application of knowledge about how a Phone functions. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Phones consistent with the warrant. The examination may require authorities to employ techniques, including imaging the Phones and computer-assisted scans and searches of the entire Phone that might expose many parts of the device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

   33. The initial examination of the Phones will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

   34. If, at the conclusion of the examination, law enforcement personnel determine

**Page 14 – Affidavit of Chad Lapp**     **USAO Version Rev. October 2015**

that particular files or file folders on the Phones or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

35.     If an examination is conducted, and it is determined that either Phone does not contain any data falling within the ambit of the warrant, the government will return the Phone or Phones to the owner within a reasonable period of time following the search and will seal any image of the Phone(s), absent further authorization from the Court.

36.     The government may retain the Phones as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phones and/or the data contained therein.

37.     The government will retain a forensic image of the Phones for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

38.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises.    Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

### Conclusion

39.    Based on the foregoing, I have probable cause to believe, and I do believe, that

the Phones described in Attachment A contains evidence of violations of 18 U.S.C.

§  2261A(2)(B), as set forth in Attachment B.    I therefore request that the Court issue a warrant

authorizing a search of the Phones described in Attachment A for the items listed in Attachment

B and the seizure and examination of any such items found.

40.    Prior to being submitted to the Court, this affidavit, the accompanying

application, and the requested search warrant were all reviewed by Assistant United States

Attorney (AUSA) Jeffrey Sweet, and AUSA Sweet advised me that in his opinion the affidavit

and application are legally and factually sufficient to establish probable cause to support the

issuance of the requested warrant.

/S/ Chad Lapp   pursuant to FRCP 4.1

CHAD LAPP
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 3:30

a.m/p.m on  5/1/19  .

THE HONORABLE MUSTAFA T. KASUBHAI
United States Magistrate Judge

**Page 16 – Affidavit of Chad Lapp**                    **USAO Version Rev. October 2015**

**ATTACHMENT A**

**Phones to Be Searched**

The phones to be searched are a black Motorola Verizon smart phone, model number

XT1710-02 and a blue Samsung Verizon slide phone, model number SCH-U460 and are

currently located at the FBI Portland Division, Bend Resident Agency, at 730 SW Bonnett Way,

Bend, Oregon, in the Evidence Locker, identified with case number 9A-PD-2609198.  The

Samsung phone is marked as Evidence Item 1B1 and the Motorola is marked as Evidence Item

1B2.

## ATTACHMENT B

### Items to Be Seized

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 2261A(2)(B) (Stalking) and involve Jonathan Mann (MANN) since 07/26/2015, including:

      a.      Lists of contacts and related identifying information.

      b.      Communications between Mann and AV1, AV2, W1, and W2.

      c.      Communications between Mann and anyone regarding AV1, AV2 and W1, and his intent in communicating with AV1, AV2 and W1.

      d.      Information regarding Mann's feelings towards AV1, AV2 and W1 and their family, friends and associates, and information about any plans regarding them.

      e.      Photos or records of contact with AV1, AV2, W1, and W2 and their family.

      f.      Electronic notes regarding AV1, AV2, W1, and W2 and their family.

      g.      Information recording MANN's schedule or travel from 07/26/2015 through the time of seizure.

      h.      Information regarding MANN's mental state and mental health.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Records evidencing the use of the Internet, including:

      a.      Records of Internet activity, browser history and cookies, "bookmarked"

or "favorite" web pages, and search terms that the user entered into any Internet search engine.

> b.     Records of data storage accounts and use of data storage accounts.

4.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

<strong>Search Procedure</strong>

5.     The examination of the Devices may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

6.     The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

7.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Devices or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without

authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8. If an examination is conducted, and it is determined that the Devices does not contain any data falling within the ambit of the warrant, the government will return the Devices to its owner within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

9. The government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

10. The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 3 – Attachment B**                    **USAO Version Rev. October 2015**